# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| EBONY COSBY,<br><br>         *Plaintiff,*<br>  v.<br><br>CMA'S COLONIAL BUICK GMC,<br><br>         *Defendant.* | CASE NO. 3:22-cv-00076<br><br>MEMORANDUM<br>OPINION & ORDER<br><br>JUDGE NORMAN K. MOON |

  The Plaintiff, Ebony Cosby, brought a complaint alleging "discrimination, unfair practices, unequal opportunity, [and] deprivation of rights under color of law" by the Defendant, CMA's Colonial Buick GMC. Dkt. 2. The Court will grant the Defendant's Motion to Dismiss because Plaintiff has failed to state a claim on which relief can be granted. Dkt. 6.

## Facts

  The following facts are alleged in Plaintiff's Complaint and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (reiterating the appropriate standard of review).

  On November 30, 2022, Plaintiff received an email from GM Financial pre-approving her to purchase a 2019 GMC Yukon. Dkt. 2 ¶ 1. She filled out an inquiry on CMA's website and received an inquiry confirmation email. *Id.* She called the dealership, was unable to reach a salesperson, and then went in person to the dealership. *Id.*

  At the dealership, Plaintiff consulted with a salesman and told him about the email pre-approval. *Id.* ¶ 4. The salesman took down her name and told her they did not have the car she wanted. Plaintiff then specified that she wanted to buy the car used and showed the salesman the

1

listing; he then remembered that the dealership had it and left to speak with his manager. *Id.* ¶¶ 4–5. Plaintiff waited for fifteen minutes while the salesman "laughed and joked with his colleagues" before she became agitated and left without being offered further assistance. *Id.* ¶ 5. Plaintiff then called the dealership, asking to speak with the manager, and reached "someone named Nick." *Id.*

Nick told Plaintiff that there was no pre-approval sent over from GM Financial, and that she should "apply for financing through one of the dealerships affiliated [sic]." *Id.* Plaintiff told him she would email him the pre-approval and that she only wanted to finance with GM Financial. *Id.* Nick said that he had not received her first inquiry, to which Plaintiff replied that she had gotten a confirmation email from him. *Id.*

Nick told Plaintiff to fill out another application through the dealership, but Plaintiff objected because doing that differed from the instructions in the pre-approval email; Nick said he would check with GM Financial. *Id.* ¶ 6. Nick passed the pre-approval email to his finance manager and told Plaintiff that the finance manager would call her. *Id.*

The finance manager called Plaintiff and told her that they worked with other lenders who could get her a better deal. *Id.* ¶ 7. Plaintiff instructed him only to send her credit application to GM Financial, and they filled out the application over the phone with the same information that Plaintiff had used in her initial online application to GM Financial. *Id.* The finance manager told Plaintiff that he had sent in the application and would call back with the result. *Id.* He called to tell her that the application was declined. *Id.* Plaintiff asked if he had used the correct information, because she found it incredible that she would be declined based on debt-to-income ratio because she did not have any debt. *Id.* Plaintiff expressed skepticism about

the application having been submitted because she did not receive a credit inquiry. *Id.* The finance manager affirmed that he had submitted the application. *Id.*

Plaintiff then called GM Financial; she was told that personnel there could only find the pre-approval application and not any subsequent ones. *Id.* ¶ 8. GM Financial asked for the reference number of the application that the dealership finance manager had submitted. *Id.* Plaintiff called the dealership to get the number and asked to speak with a manager; she described her situation to yet another individual (Gavin), who also told Plaintiff that the application came back denied, and gave her the reference number. *Id.* ¶¶ 8–9.

Equipped with the reference number, Plaintiff called GM Financial back but was still unsuccessful in locating the application. *Id.* ¶ 9. GM Financial told Plaintiff to fill out a paper application and fax it in; Plaintiff went to the dealership and met with Gavin to do this. *Id.* ¶¶ 9–10. Gavin told Plaintiff that he would call when there was an answer. *Id.* ¶ 10. Plaintiff asked for a copy of the application and the reference number. *Id.* Gavin gave Plaintiff a reference number that was the same as that of the prior application; questioned about this, he told Plaintiff that since none of the information had changed it was the same application. *Id.* Plaintiff told Gavin that the information did change (the Complaint does not indicate what that change was). *Id.* Gavin insisted that only the one number was given to him. *Id.* Gavin then called Plaintiff and told her that the application was denied and that they would send her a letter explaining why. *Id.* ¶ 11. Plaintiff then spoke to "several people" at GM Financial who told her that no application was sent in and that "if there's a pre-approval it will more than likely be approved as long as the information doesn't change." *Id.*

3

Plaintiff complained about CMA's Colonial Buick GMC to the Consumer Financial Protection Bureau (CFPB), the Motor Vehicle Dealer Board of Virginia, and the Virginia Attorney General's Office. *Id.* ¶ 12.

On December 2, 2022, Plaintiff again called GM Financial and was told that they still had not received the applications. *Id.* On December 8, Plaintiff called the dealership "to inform them that GM Financial approved funding and would be reaching out to someone to please be on a look out." *Id.* ¶ 13. Plaintiff was transferred to Gavin, who told Plaintiff that he would have to speak with his manager. *Id.* Plaintiff asked to speak to the manager herself. *Id.* Gavin informed Plaintiff that due to the complaints she had filed about the dealership, they did not want to do business with her. *Id.* Plaintiff asked if he was in fact going to speak with his manager, "because he just told me because I exercised my rights I am being retaliated (sic) which intel will cause another complaint." *Id.* Gavin repeated that they did not want to do business with her and disconnected the call. *Id.*

On December 9, 2022, Plaintiff emailed the CEO of CMA, who read but did not respond to the message. *Id.* ¶ 14. Plaintiff called and left a message with the CEO's assistant, again with no response. *Id.* On December 12, Plaintiff received a response from the CEO through the Motor Vehicle Dealer Board in relation to the complaint she had filed with the board. *Id.* Plaintiff asserts that the response, which is not included among the many documents appended to her Complaint, contained untrue statements about her wanting to trade in a vehicle. *Id.* Plaintiff alleges that the response shows purposeful retaliation for her complaints. *Id.* Plaintiff wrote to the Virginia Attorney General's Office about her dealings with CMA, stating "I feel like because I'm a young African American female with not so good credit and because I'm not putting down

4

a downpayment I was discriminated against and because I filed a complaint they are refusing to sale [sic] me a vehicle." Dkt. 2-1 (Compl. Ex. A) at 1–2.

In its Motion to Dismiss, Defendant argues that Plaintiff fails to allege facts that would support a claim of intentional discrimination, unequal opportunity, or retaliation. Dkt. 6 at 2–4. It also argues that Plaintiff fails to allege an unfair trade practice or any deprivation of rights under color of law. *Id.* at 4–6.

## **Legal Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in a plaintiff's favor, *Rubenstein*, 825 F.3d at 212. A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotation marks omitted).

This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only

a complaint that states a plausible claim for relief survives a motion to dismiss"). Courts are to construe the filings of *pro se* litigants liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1970), but nonetheless, a *pro se* complaint must state a plausible claim to relief, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## Analysis

Plaintiff has described a circuitous series of events which were most likely irritating to experience. However, the Complaint includes no facts that indicate that Plaintiff was subjected to discrimination based on sex, race, or other protected characteristic. (The Court operates with the assumption that Plaintiff aimed to invoke the protection of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(a), which forbids the discriminatory credit decisions based on race, color, religion, national origin, sex, marital status, age, public assistance program income, or the good faith exercise of rights under ECOA.)

In addition to lacking facts that would support a finding of discrimination, Plaintiff's Complaint in fact suggests that her application was denied for financial reasons. In the grievance which she submitted to the CFPB, which she attached to her Complaint, Plaintiff stated "This is the third time dealing with [Defendant] and being treated like this because I won't put a downpayment." Dkt. 2-3 at 3. Similarly, in Plaintiff's correspondence with the Virginia Attorney General's Office, Plaintiff stated "I feel like because I'm a young African American female with not so good credit and because I'm not putting down a downpayment I was discriminated against and because I filed a complaint they are refusing to sale [sic] me a vehicle." Dkt. 2-1 at 1–2. Although Plaintiff has alleged in a conclusory fashion that she felt there was a racial element to the decision, she provided no facts supporting this feeling—and indeed noted her own credit rating and lack of downpayment as reasons for the alleged discrimination.

Simply put, even with the liberal reading that a *pro se* filing deserves, Plaintiff has failed to allege any facts showing that the credit denial and frustration she experienced were related to discrimination based on a protected characteristic rather than being the result of financial analysis, perhaps in combination with confused business practices. Taking all the allegations in the Complaint as true, Plaintiff experienced poor customer service: that does not create an actionable wrong.[*]

As to Plaintiff's argument that Defendant's refusal to do business with her after she filed complaints was unlawful retaliation, the Court has attempted to identify a law that would compel Defendant to contract with Plaintiff and been unable to do so. While having exercised rights under ECOA is one of the characteristics which ECOA protects, 15 U.S.C. § 1691(a)(3), the Court can find no authority for the proposition that filing complaints with the CFPB, the Virginia Motor Vehicle Dealer Board, or the Office of the Virginia Attorney General, as Plaintiff did, comprises protected activity under ECOA or another statute.

Having reviewed the Complaint thoroughly, the Court also cannot find factual support for Plaintiff's very general allegations of unfair practices, unequal opportunity, or deprivation of rights under color of law. It is particularly unclear how Defendant, as a car dealership, would be acting under color of law.

---

[*] Plaintiff's Motion of [sic] to Strike Defendant's Motion to Dismiss[;] Plaintiffs [sic] Motion for Summary Judgment (Dkt. 12) seems to argue that because Plaintiff mailed a document purporting to transfer property of the Ebony Cosby Living Trust to Defendant, Defendant has acquiesced to a contractual relationship and "agreed they were attempting a distortion [sic] and robbery of all chattel papers and securities[.]" Because this line of argument was not introduced in the Complaint, the Court will refrain from considering it.

On all fronts, Plaintiff has failed to state claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570. Because Plaintiff has failed to allege facts that support any claim of unlawful behavior by Defendant, the court will **GRANT** Defendant's Motion to Dismiss, Dkt. 6.

It is so **ORDERED**.

The Clerk is directed to forward a copy of this Memorandum Opinion & Order to Plaintiff and all counsel of record, and to strike this case from the Court's docket.

Entered this   20th   day of October, 2023.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE